1  LEE TRAN & LIANG LLP
   James M. Lee (Bar No. 192301)
2  *james.lee@ltlattorneys.com*
   Enoch H. Liang (Bar No. 212324)
3  *enoch.liang@ltlattorneys.com*
   Timothy S. Fox (Bar No. 280918)
4  *timothy.fox@ltlattorneys.com*
   601 S. Figueroa Street, Suite 3900
5  Los Angeles, California 90017
   Tel.: 213-612-8900 / Fax: 213-612-3773
6
7  Attorneys for Plaintiff/Counter-Defendant
   VIZIO, Inc.

8              **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

11 VIZIO, INC., a California corporation,    CASE NO.: 8:13-cv-00160-JLS-RNB

12              Plaintiff,                   **VIZIO, INC.'S OPPOSITION TO
                                             DEFENDANT'S MOTION IN
13                                           LIMINE NO. 1**
        vs.
14                                           [Filed with Consolidated Declaration of
                                             Timothy Fox]
15 GEMTEK TECHNOLOGY CO.,
   LTD., a Taiwan corporation; and          Date:     August 22, 2014
16 DOES 1 to 10,                            Time:     1:30 p.m.
                                             Ctrm:     10A
17              Defendants.                  Judge:    Hon. Josephine L. Staton
18
                                             Action Filed:    October 9, 2012
19 AND ALL RELATED ACTIONS                   Trial Date:      September 9, 2014
20

21

22

23

24

25

26

27

28

---

# TABLE OF CONTENTS

page

I.     INTRODUCTION ........................................................................... - 1 -

II.    ARGUMENT ................................................................................ - 2 -

    A.    Gemtek's Motion Should Be Denied Because It Is Untimely .............. - 2 -

    B.    Dr. Edwards Has Offered Reliable And Relevant Expert Testimony On Matters Which He Is Qualified To Opine On ....................................... - 2 -

        i.    Dr. Edwards's Extensive Education, Background, And Experience Qualify Him To Opine On Industry Standard Practices ................ - 4 -

        ii.   Dr. Edwards's Expert Opinion Concerns Industry Standard Software Development Practices, Gemtek's Deviation From Those Practices And The Quality Issues That May Result From Such Deviation .. - 5 -

        iii.  Dr. Edwards's Opinion Relies On His Extensive Experience ....... - 7 -

    C.    It Would Be Unfairly Prejudicial To Exclude Dr. Edwards But Not Gemtek's Expert .................................................................. - 9 -

III.   CONCLUSION ........................................................................... - 12 -

TABLE OF AUTHORITIES                    page

**CASES**

*Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1178 (1999)...................................- 8 -

*Tassin v. Sears Roebuck*, 946 F.Supp. 1241, 1248 (M.D.La. 1996) ........................- 8 -

*United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997)..............................................- 8 -

**FEDERAL RULES**

Federal Rule of Evidence 702 ...................................................................................- 8 -

VIZIO'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

## I. INTRODUCTION

Gemtek Technology Company Ltd.'s ("Gemtek") Motion in Limine is untimely. Under the Court's standing order, all *Daubert* motions had to be brought within seven days of the close of expert discovery. Gemtek's Motion was brought over two months after that date. For this reason alone, Gemtek's motion must be denied.

Even ignoring the untimeliness, Gemtek's Motion should be denied because it is based on a mischaracterization and misinterpretation of Dr. Edwards's opinion and testimony. This case is about a product defect that never would have occurred if Gemtek had done what it promised it would do instead of cutting corners at every turn. Gemtek developed two versions of a wireless HDMI device for VIZIO, Inc. ("VIZIO"). The first, commonly referred to as MP1, functioned and sold well. The second, commonly referred to as MP2, transmitted video but not audio from several very common devices, leading to a nationwide recall of the device. One of the issues in this litigation is what changes did Gemtek make between MP1 and MP2 that led to this fatal flaw and, more importantly – how was such a glaring defect not detected prior to shipping over 15,000 units.

Accordingly, Dr. Edwards does not opine as to the actual root cause of the defect at issue in this litigation. Rather, Dr. Edwards opines as to Gemtek's general sloppiness in developing the software at issue and how that can, and likely did, lead to the issues experienced here. This is an opinion that Gemtek cannot, and notably does not, challenge that he is qualified to provide.

VIZIO will be severely prejudiced if Gemtek is allowed to bring an untimely and unmeritorious motion to disqualify its expert, especially considering that VIZIO did not bring such a motion specifically because the time to bring *Daubert* motions expired. Gemtek's Motion should be denied.

## II.     ARGUMENT

### A.     Gemtek's Motion Should Be Denied Because It Is Untimely

Gemtek's Motion is untimely.  The Court's Standing Order states that "*[u]nlike other motions in limine*, *Daubert* motions *shall* be filed within seven days after the expert discovery cut-off date set in the Scheduling Order docketed in the case." *See* Judge Staton Standing Order No. 11(d) (emphasis added).

The discovery cut-off date according to the scheduling order in this case was April 29, 2014.  Dkt. No. 27.  While the Court never technically extended the discovery cut-off date, it did grant a stipulation between the parties to allow the depositions of Gemtek and VIZIO expert witnesses to occur the week of May 27, 2014.  Dkt. No. 69. However, the Court's Order granting the parties' stipulation did not extend the discovery cut-off date.  Rather, it specifically allowed the parties to take certain depositions *after* the date had passed.  The very title of the stipulation, as well as the language used by the Court states that the stipulation was to "Take Discovery *After Discovery Cutoff*," rather than to extend the discovery cut-off date.  Dkt. No. 69 (emphasis added).

However, even if the Court considers this stipulation a de facto extension of the discovery cut-off date for the *Daubert* motion deadline, Gemtek still failed to bring its Motion in a timely manner.  Under the Court's standing order, a revised discovery cut-off date of May 30, 2014[1]  would still create a June 6 deadline for *Daubert* motions. Gemtek did not file the instant motion until July 25.  Gemtek's motion should be dismissed on its untimeliness alone.

### B.     Dr. Edwards Has Offered Reliable And Relevant Expert Testimony On Matters Which He Is Qualified To Opine On

Gemtek's Motion is unclear as to on exactly what basis it is challenging Dr. Edwards's opinion and whether it is challenging his initial or rebuttal report or merely

---

[1] Dr. Edwards's deposition was taken on May 30, 2014.  (Declaration of Timothy Fox ("Fox Decl."), ¶ 2.

his testimony.  In fact, a significant portion of Gemtek's Motion is spent discussing Gemtek's own expert and his testing procedures[2], which is not relevant to Dr. Edwards own opinion.

It appears that Gemtek's entire *Daubert* motion hinges on its allegation that Dr. Edwards is opining on the definitive cause of the "no audio" issue.  Gemtek claims that Dr. Edwards "ascribes the no audio failure to 'a combination of sloppy software engineering practices and poor testing on the part of Gemtek.' "  Motion at 3:14-15. Gemtek further argues that Dr. Edwards has based much of his expert opinion on software testing—an opinion it alleges he is not qualified to give.  *See* Motion at 6:2-3 ("By his own admission, Dr. Edwards is not an expert with respect to testing software."); 7:11-12, 17-18 ("Examining the underlying source code of device software is a necessary predicate in determining whether the software was responsible for a device's failure. . . . Yet, Dr. Edwards did not actually look at the underlying source code to determine the root cause of the wHDMI device's failure.").

It should be noted that Dr. Edwards never viewed the underlying source code because, as Gemtek is undoubtedly aware, Gemtek failed to timely produce the relevant source code.[3]  Of the versions of the source code Gemtek actually produced, they were only produced *after* Dr. Edwards had already issued his initial and rebuttal reports and only a few weeks before his deposition.

However, a discussion of whether Dr. Edwards reviewed the source code is not relevant as it misconstrues the nature of Dr. Edwards's opinion.  Dr. Edwards's deposition testimony and reports speak primarily to three conclusion, that: 1) there are certain standards of care and practice that are commonly followed in the software

---

[2] As discussed below, Gemtek's own expert's opinion suffers from numerous deficiencies.

[3] Gemtek only produced a subset of the applicable source code on May 9, 2014. However, Gemtek admits that key versions of the source code have been lost and were never produced.  Gemtek never produced the software development kits that it used to develop the firmware.  Declaration of Timothy Fox, ¶ 3.

VIZIO'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

development industry to ensure product quality; 2) Gemtek failed to comply with these standards; and 3) the failure to comply with these standards can very well lead to a poor final product, as was seen here.  Dr. Edwards is well qualified and prepared to offer an expert opinion on these conclusions.

### i. Dr. Edwards's Extensive Education, Background, And Experience Qualify Him To Opine On Industry Standard Practices

Dr. Edwards has been involved in the electrical engineering and computer science industries for approximately 25 years. (Edwards Report at ¶ 10, attached as Ex. A to Fox Decl.)  He has a B.S., M.S., and Ph.D. in Electrical Engineering and currently teaches Computer Science at Columbia University[4].  *Id*. at ¶¶ 10, 13.  He has extensive experience in the software industry and has been published over 80 times on his areas of expertise.  *Id.* at ¶ 14.  His extensive *curriculum vitae* can be found attached to his Expert Report.  (Exhibit A to Edwards Report, attached as Ex. A to Fox Decl.)

Dr. Edwards's considerable experience in the software industry would make challenging his expertise in software development quite difficult.  It is no wonder, then, that Gemtek has raised no argument as to Dr. Edwards's qualifications as an expert in software development.  Instead, Gemtek uses a straw man argument to narrow the scope of Dr. Edwards's relevant expertise to *software testing* only.  Gemtek then rests its entire attempt to disqualify Dr. Edwards's expertise on a single question and answer at the end of his deposition, wherein Dr. Edwards states that he doesn't "consider himself an expert in this particular domain." (Motion at 6:4-9.)

In arguing that Dr. Edwards is not qualified to offer an expert opinion on software testing, Gemtek has obfuscated the actual relevant inquiry—Dr. Edwards's expertise in software development.  His expertise in software development is

[4] Columbia's computer science program is ranked 15 in the country according to U.S. News. *See* http://grad-schools.usnews.rankingsandreviews.com/best-graduate-schools/top-science-schools/computer-science-rankings

VIZIO'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

unassailable and, as discussed in greater detail below, is the relevant area of expertise to his opinion in this case.

> **ii.     Dr. Edwards's Expert Opinion Concerns Industry Standard Software Development Practices, Gemtek's Deviation From Those Practices And The Quality Issues That May Result From Such Deviation**

A closer examination of Dr. Edwards's deposition transcript and expert report makes clear that the crux of his expert opinion is the importance of certain industry practices in place to prevent issues with software development and Gemtek's failure to observe those practices.  His expert report contains numerous references to various safeguards observed by the software development industry to prevent issues with product quality, and discusses Gemtek's failure to observe many of these practices. *See*:

- "While Gemtek's use of the C (or C++) programming language and the IAR tools is standard practice in industry, it appears they were less disciplined in their development process than is standard.  This, in part, lead to the known problems."  (Edwards Expert Report at ¶ 24, attached as Ex. A to Fox Decl.)

- "The C [and C++] language[s] . . . can be error-prone. . . . [I]t is easy to write a C [or C++] program [] that compiles [] without any errors or warnings but behaves differently when compiled under different compiler settings or under different, but still correct, C compilers.  This behavior may have directly caused the observed failures."  (Edwards Expert Report at ¶ 25, attached as Ex. A to Fox Decl.)

- "[T]here are at least three techniques that software engineers routinely use to mitigate the risk of bugs in embedded software such as Gemtek was developing. . . . Gemtek appears to have failed to adequately follow them."  (Edwards Expert Report at ¶ 26, attached as Ex. A to Fox Decl.)

- Discussing evidence that Gemtek was not aware of, or paying enough attention to, the potential pitfalls that accompany use of C programming language. (Edwards Expert Report at ¶¶ 27-28, attached as Ex. A to Fox Decl.)

- "Consistency is the second technique for mitigating a whole class of problems. Since changes in program behavior can occur when the "build environment" changes—the compiler settings, the library, and the compiler itself, standard industry practice is to make sure all of these are consistent across all developers. For example, I would expect to see either a single computer responsible for all builds or specific rules, used by all developers, about what compiler settings and software they should be using to compile their code. I suspect Gemtek's lack of attention to this issue of build environment consistency was a key factor in the observed failures." (Edwards Expert Report at ¶¶ 29, 30, attached as Ex. A to Fox Decl.)

- "Such sloppiness meant that Gemtek engineers were effectively testing completely different systems that they assumed were identical. . . . This practically nullifies the utility of conducting software testing, which is typically based on the assumption that all copies of the software are identical and will behave identically when deployed." (Edwards Expert Report at ¶ 32, attached as Ex. A to Fox Decl.)

- "Extensive testing is the final defense against such bugs being shipped in the final product, which is what appears to have happened here." (Edwards Expert Report at ¶ 33, attached as Ex. A to Fox Decl.)

- "While the existence of [] testing document [Gemtek Vizio 000044-00076] indicates Gemtek was certainly aware of the need for testing, it raises two serious concerns: I believe the extent of the testing was inadequate, and I believe Gemtek did not repeat their own test

6

procedure before releasing a new version of the software."  (Edwards Expert Report at ¶ 37, attached as Ex. A to Fox Decl.)

- Opining that testing the device on only three HDMI devices where there are numerous HDMI devices available on the market is clearly insufficient.  (Edwards Expert Report at ¶¶ 38, 39, attached as Ex. A to Fox Decl.)

Notably absent from this extensive list of Gemtek's failure to comply with industry standard practices is any statement by Dr. Edwards regarding the root cause of the "no audio" issue.  Instead, Dr. Edwards, unlike Gemtek's own expert[5], was aware of the difficulty involved in locating the root cause, and knew that he would be unable to do so without the hardware and source code that only Gemtek possessed and refused to produce or lost.  Accordingly, Dr. Edwards stayed within his expertise and instead discussed multiple instances of Gemtek's lack of quality control, and how each instance of quality control could lead to issues with the final product.

Any argument by Gemtek that Dr. Edwards is opining on the actual root cause of the "no audio" issue rests on Gemtek's mischaracterization of his report and testimony.  Dr. Edwards's opinion describes Gemtek's failure to diligently observe industry-standard practices designed to ensure quality.  This is an opinion that Dr. Edwards is more than qualified to offer, and one that is highly relevant to a jury in determining to what extent Gemtek was at fault for the defects in the final product.

### iii.   Dr. Edwards's Opinion Relies On His Extensive Experience

At the close of its Motion, Gemtek briefly contends that Dr. Edwards provides no methodology upon which his opinions are based and therefore his expert opinion should be excluded.  Once again, much of Gemtek's argument relies on its misstatement of Dr. Edwards's deposition testimony and expert report.  Gemtek wrongfully contends that Dr. Edwards gave an opinion as to the definitive cause of the

---

[5] As discussed in more detail below, Gemtek's own expert is actually unsure of the root cause of the "no audio" issue.

VIZIO'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

"no audio" issue, rather than offering an opinion as to Gemtek's sloppy software development process.

More importantly, however, and contrary to Gemtek's assertions, an expert opinion does not have to be grounded in a disclosed methodology based on the "scientific method" for it to be admissible.  The Committee Notes on Rules – 2000 Amendment to Federal Rule of Evidence 702 notes that:

> Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise.
> . . .
> Nothing in this amendment is intended to suggest that experience alone--or experience in conjunction with other knowledge, skill, training or education--may not provide a sufficient foundation for expert testimony. To the contrary, *the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience*. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. See, e.g., *United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997) (no abuse of discretion in admitting the testimony of a handwriting examiner who had years of practical experience and extensive training, and who explained his methodology in detail); *Tassin v. Sears Roebuck*, 946 F.Supp. 1241, 1248 (M.D.La. 1996) (design engineer's testimony can be admissible when the expert's opinions "are based on facts, a reasonable investigation, and traditional technical/mechanical expertise, and he provides a reasonable link between the information and procedures he uses and the conclusions he reaches"). *See also Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1178 (1999) (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

Fed. R. Evid. 702 advisory comm. nn. (West 2000).

As the Advisory Committee makes clear, an expert can explain how his experience leads to his conclusion, why his experience provides a sufficient basis for his opinion, and how his opinion is reliably applied to the facts.  As discussed above,

VIZIO'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

Dr. Edwards is well-established as an expert in the field of software development and is quite familiar with the plethora of industry-standard practices observed to ensure product quality.  His opinion regarding Gemtek's deviation from and failure to observe these practices is based on that expertise.  His ability to recognize sloppy software development stems from his decades of experience in the industry, and is not something that can easily be quantified and explained as part of a "methodology."

Moreover, Gemtek had ample time to inquire as to Dr. Edwards's methodology as it relates to his determination of Gemtek's sloppy development practices.  However, Gemtek instead ended Dr. Edwards's deposition after less than four hours of testimony.[6]  Gemtek cannot argue that Dr. Edwards did not provide the necessary information, when Gemtek did not ask the necessary questions.

## C.    It Would Be Unfairly Prejudicial To Exclude Dr. Edwards But Not Gemtek's Expert

Gemtek touts its expert, Mr. Stepan, better qualified to opine in this case because he "tested the SiBeam SDK software source code. . . ."  (Motion at 3.)  However, Mr. Stepan's opinion and testing is fatally flawed as he examined *different* source code[7], *modified* the hardware he used in his tests[8], and more importantly *never actually replicated* the "no audio" issue.[9]  Moreover, Mr. Stepan could not test all the

---

[6] Fox Decl, ¶ 2.

[7] *See* Fox Decl, ¶ 4. Mr. Stepan admitted that he had not actually test or reviewed the source code that caused the no audio defect.  (Stepan Depo. at 98:22-99:8, 104:18-105:5 attached to Fox Decl, as Ex. D; Stepan Expert Report at 9 attached to Fox Decl, as Ex. C.)

[8] *See* Fox Decl, ¶ 4. Mr. Stepan admitted that the version of hardware he was provided by Gemtek was completely modified and he was not sure of all the modifications that were made.  (Stepan Depo. attached to Fox Decl, as Ex. D at 73:25-74:12, 76:18-21; Stepan Expert Report at 9 attached to Fox Decl, as Ex. C.)

[9] *See* Fox Decl, ¶ 4. Mr. Stepan did not actually replicate the actual "no audio" issue in his tests.  (Stepan Expert Report attached to Fox Decl, as Ex. C at 12.) Additionally, Mr. Stepan would have no way of knowing if he replicated the "no audio" issues as he did not analyze or compare the actual HDMI signals coming out of an MP1 and MP2 device to determine why audio was transmitted in one instance but not the other.

VIZIO'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

1  relevant source code as Gemtek admits it failed to preserve it.[10]

2      As such, like Dr. Edwards, Mr. Stepan never reviewed the applicable source

3  code and never actually tested an intact wHDMI device.  (Motion at 7:10-10:2.)

4  Rather, all of his testing was conducted on a device that was heavily modified and

5  specifically provided to him by Gemtek.  In this sense, Mr. Stepan's testing was of no

6  value and he is, thus, poorly suited to opine on the cause of the "no audio" issue.[11]

7      In fact, any argument by Gemtek regarding the importance of complete and

8  meticulous testing actually supports the exclusion of Mr. Stepan's opinion, which

9  contains none of these features.  Mr. Stepan's report is rife with assumptions and

10  conclusions that are not supported by his own test results and are merely results-driven

11  advocacy for Gemtek's unsupported attempt to shift blame to a third-party.  Dr.

12  Edwards's testimony, on the other hand, presents a neutral opinion that is actually

13  supported by the relevant evidence and shows Gemtek's sloppy software development

14  practices.

15      In complying with the Court's Standing Order, VIZIO purposefully did not

16  bring its own *Daubert* motions.  Had the time to do so not passed, VIZIO would have

17  brought *Daubert* motions against all of Gemtek's purported experts.  Gemtek's

18  component expert admitted he spent a total of three days preparing his report, and

19  simply regurgitated the exact same numbers and positions that Gemtek told him

20  without any investigation of his own.[12]  Likewise, Gemtek's financial expert admitted

21

22  (Stepan Depo at 25:11-23, attached to Fox Decl., as Ex. D.)
   [10] Fox Decl., ¶ 3.

23  [11] Notably Mr. Stepan admits there are at least seven possible causes of the "no audio"
24  issue.  Fox Decl., ¶ 4.

   [12]*See* Fox Decl, ¶ 5.  Gemtek retained Wei Wei as an expert to provide testimony as to
25  the level of effort Gemtek undertook in reselling leftover components.  Mr. Wei
26  admitted that he had spent only three days preparing his report [Wei Depo. at 37:14-18,
   attached as Ex. F to Fox Decl.] and likely due to this short time frame did not know
27  what components Gemtek used for VIZIO's projects [Wei Depo. at 11:12-17, attached
   as Ex. F to Fox Decl.], the value of the components [Wei Depo at 52:25-53:12,
28  attached as Ex. F to Fox Decl.] nor the demand for the components [Wei Depo at

VIZIO'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1

1  she did not even perform her own analysis and her subordinates performed the majority

2  of the work.[13]  Moreover, it is unclear why Gemtek retained a financial expert as she

3  did nothing but add numbers on a spreadsheet Gemtek provided her.[14]  Gemtek should

4  not be allowed to benefit from its delay in filing the instant *Daubert* motion, as VIZIO

5  would have filed its own *Daubert* motions in the absence of the Court's Standing

6  Order.

7           VIZIO will be severely prejudiced if Gemtek is allowed to challenge VIZIO's

8  experts, but VIZIO is prevented from doing the same to Gemtek's experts solely

9  because VIZIO followed the Court's order.  Gemtek's Motion must be denied on this

10 ground alone, or, at the very least, VIZIO must be allowed to file its own *Daubert*

11 Motions.

12 / / /

13 / / /

14

15

16

---

17 51:20-52:9, attached as Ex. F to Fox Decl.].  Mr. Wei also did not know anything about

18 Gemtek's attempts to resell, return, or reuse the components. [Wei Depo. at 64:5-22,
   attached as Ex. F to Fox Decl.]  In fact, Mr. Wei knew so little about the information on

19 which he was supposedly opining that during his deposition he repeatedly had no

20 explanation other than to say he would have to stipulate to Gemtek's representations
   multiple times. [Wei Depo at 21:8-11, 26:4-16, 31:4-13, 37:19-25, 38:8-17, 71:6-17,

21 80:3-13, 8:25-81:4 , attached as Ex. F to Fox Decl..]  Moreover, Mr. Wei admitted he

22 did not have the necessary documents to reach his opinion. [Wei Depo. at 88:12-89:7,
   attached as Ex. F to Fox Decl.]

23 [13] *See* Fox Decl, ¶ 6.  Gemtek's financial expert, Heather Xitco, was retained by

24 Gemtek to quantify its damages. [Xitco Depo. at 15:8-16.] Ms. Xitco admitted that her
   subordinates analyzed information for her and billed two-to-three times as many hours

25 as she did. [Xitco Depo. at 17:2-5, 50:6-51:5, 120:6-19.]

26 [14] Ms. Xitco admitted that she had no understanding of Gemtek's damages claim
   beyond what was stated in the pleadings [Xitco 47:17-25] and stated numerous times

27 that all she did was add, multiply, and sum numbers that Gemtek provided her without

28 undertaking any of her own investigation. [Xitco Depo. at 29:24-30:22, 32:19-24,
   75:3-14, 102:9-103:8, 112:1-4.]

1

2    **III.    CONCLUSION**

3        For these reasons, VIZIO respectfully requests that the Court deny Gemtek's

4    Motion in Limine No. 1 to exclude the expert testimony of Dr. Stephen A. Edwards.

5

6    August 1, 2014                                    **LEE TRAN & LIANG LLP**

7

8                                            By _____/S/ *James M. Lee*_____

9                                                JAMES M. LEE
                                                 ENOCH H. LIANG
                                                 TIMOTHY S. FOX
10                                               Attorneys for Plaintiff, VIZIO, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VIZIO'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 1